https://www.courtclerk.org/data/case_summary.php

1/1

| Case Number: | A 2003542 |
|---|---|
| Court: | Common Pleas Civil |
| Case Caption: | KELLEY RIORDAN vs. US BANK NATIONAL ASSOCIATION |
| Judge: | MELBA D MARSH |
| Filed Date: | 10/06/2020 |
| Case Type: | H706 - OTHER CIVIL & JURY DEMAND |
| Total Deposits: | $625.00 Credit |
| Total Costs: | $268.00 |

Case History

Show All Rows

| Date | Description | Amount |
|---|---|---|
| 10/14/2020 | JUDGE ASSIGNED CASE ROLLED TO MARSH/MELBA/D PRIMARY | |
| 10/12/2020 | ELECTRONIC POSTAL RECEIPT RETURNED, COPY OF SUMMONS & COMPLAINT DELIVERED TO US BANK NATIONAL ASSOCIATION ON 10/10/20, FILED. [CERTIFIED MAIL NBR.: 7194 5168 6310 0927 7701] | |
| 10/07/2020 | CERTIFIED MAIL SERVICE ISSUED TO US BANK NATIONAL ASSOCIATION [CERTIFIED MAIL NBR.: 7194 5168 6310 0927 7695] | |
| 10/07/2020 | CERTIFIED MAIL SERVICE ISSUED TO US BANK NATIONAL ASSOCIATION [CERTIFIED MAIL NBR.: 7194 5168 6310 0927 7701] | |
| 10/07/2020 | SUMMONS ISSUED BY CERTIFIED MAIL TO US BANK NATIONAL ASSOCIATION | |
| 10/07/2020 | SUMMONS ISSUED BY CERTIFIED MAIL TO US BANK NATIONAL ASSOCIATION | |
| 10/07/2020 | FOREIGN FEES & JURY DEMAND BY MATTHEW G BRUCE | 625.00- |
| 10/06/2020 | CLASSIFICATION FORM FILED. | |
| 10/06/2020 | COMPLAINT & JURY DEMAND FILED | |



Bumberg No. 5208

EXHIBIT

A



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
October 6, 2020 04:57 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 992714

**KELLEY RIORDAN**

**A 2003542**

vs.

**US BANK NATIONAL ASSOCIATION**

## FILING TYPE:  INITIAL FILING (OUT OF COUNTY) WITH JURY DEMAND

## PAGES FILED: 15



VERIFY RECORD

EFR200

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KELLEY RIORDAN<br>7457 Chinook Dr.<br>West Chester, OH 45069 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| U.S. BANK NATIONAL ASSOCIATION<br>300 Wall St., Suite A<br>Cincinnati, OH 45212 | ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>U.S. Bank National Association<br>c/o CT Corporation System<br>(Stat. Agent)<br>4400 Easton Commons Way, Ste. 125<br>Columbus, OH 43219 | ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Kelley Riordan, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES, JURISDICTION & VENUE

1. Kelley Riordan is a resident of the city of West Chester, Butler County, state of Ohio.

2. Defendant U.S. BANK NATIONAL ASSOCIATION ("US Bank") is foreign-incorporated business that conducts business throughout the state of Ohio and others.

3. The events that give rise to the claims for relief in this Complaint occurred at US Bank's location at 300 Wall St., Suite A, Cincinnati, OH 45212.

4. US Bank is, and was at all times hereinafter mentioned, Kelley Riordan's employer within the meaning of Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq. and R.C. § 4112.01(A)(2).

5. All of the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

6. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).

7. Venue is proper pursuant to Civ. R. 3(B)(1), (2), (3) and/or (6).

8. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

9. Kelley Riordan is a former employee of Defendant.

10. At all times noted herein, Kelley Riordan was qualified for and could fully perform the essential functions of her job, with or without a reasonable accommodation.

11. Kelley Riordan is disabled due to her anxiety and depression, and thus is in a protected class for disability. Alternatively, US Bank perceived Kelley Riordan as being disabled. US Bank had notice of Kelley Riordan's protected class.

12. Additionally, Kelley Riordan is also in a protected class for disability by association with her husband Ken Riordan and her son, both of which US Bank also had notice.

13. Kelley Riordan worked for U.S. Bank as a Mortgage Processing Supervisor from March 19, 2018 until US Bank constructively terminated her employment on or about September 17, 2019.

14. Kelley Riordan found her employment with US Bank through her husband, Ken Riordan (underwriter), who began with US Bank in or around late 2016.

15. In or around summer 2018, Kelley Riordan had a mortgage loan officer (Karen Carper) reach out to her regarding a loan.

2

16. Carper had been having issues with Barb Protraffke's (loan processor) work on her loans.

17. Carper asked Kelley Riordan to discuss with Protraffke how to perform the work, which Kelley Riordan agreed to do via email.

18. Carper then emailed Kelley Riordan demeaning her leadership role, saying something to the effect of, "and you call yourself a supervisor?"

19. Kelley Riordan took this statement to HR (Matt (LNU)), Tim Hogue (sales manager), Tom Booth (regional sales manager, above Hogue), and Anthony Murt (Booth's boss, vice president, "Murt"), and requested help on how to deal with Carper.

20. Carper had had a history of causing drama in the office, bullying coworkers and superiors, and just generally being unprofessional in her work.

21. Hogue responded apologizing on Carper's behalf. Anthony Terry (site manager, "Terry") also blew off the issue, saying that that was "just how salespeople are."

22. Shortly after the above, Bridget Ellery (regional operations manager, Kelley Riordan's boss) went on vacation.

23. Terry and Wendy Kendall (regional operations manager) brought Kelley Riordan into a meeting while Ellery was on vacation.

24. In that meeting, Terry and Kendall asked why Kelley Riordan had gone to HR over Carper.

25. Kelley Riordan replied that she was tired of Carper's unprofessionalism and continued bad actions.

26. Terry and Kendall said they wished Kelley Riordan had come to them first and asked if Kelley Riordan felt they were not prepared to discipline as needed.

27. Kelley Riordan responded that she saw no reason to go to them as Carper's issues had continued for a long time without useful response despite other complaints.

28. Kelley Riordan continued working without significant issue through the winter, though faced retaliation from US Bank against her complaint against Carper.

29. In or around February 2019, the regional sales meeting in Tennessee occurred.

30. Kelley Riordan, however, was specifically disallowed from attending, despite being a supervisor and regularly attending the meetings previously, purportedly due to "budget cuts."

31. The entire underwriting team of managers and supervisors attended, and all of Kelley Riordan's same-level coworkers attended. Kelley Riordan felt this was retaliatory against her previous complaints and discriminatory against her disabilities.

32. In or around March 2019, US Bank dissolved the construction loan department and moved the work under Kelley Riordan's department.

33. Terry, Ellery, Colleen Losey (closing manager), and Steven Hinkle (business processor) then went to St. Louis for training on construction loans.

34. Kelley Riordan, again, was disallowed from attending, interfering with her ability to perform her essential job functions.

35. Kelley Riordan was not given reason as to why she was not allowed to attend, so she viewed this as additional retaliation against her complaints and discriminatory against her.

36. Ellery texted Kelley Riordan in the midst of the meeting that she should have attended as it was directly relevant to Kelley Riordan's job duties.

37. In or around mid-April 2019, Terry and the regional sales managers put together a Happy Hour after work on a Wednesday night, Kelley Riordan did not wish to attend as her son had a regularly recurring medical appointment on Wednesdays, including when the Happy Hour was scheduled (she did not cite the reason why she did not plan on attending).

38. Terry sent an email to the various managers and supervisors asking for who would attend and noted that he would "be disappointed" if someone could not make the event.

39. Kelley Riordan responded to Terry saying she could not make the Happy Hour, and Terry responded that he wished Kelley Riordan had told him sooner.

40. Terry said that Kelley Riordan needed to do some things outside regular hours due to her supervisory role, and Kelley Riordan responded noting the sales meeting the following day with two new mortgage loan officer hires, outside work hours.

41. Kelley Riordan felt the specific timing of this event and the problems not attending caused were discriminatory against her and her son's disabilities.

42. Ken Riordan went out on FMLA leave beginning on April 5, 2019 (he returned on or about July 8, 2019).

43. In or around May 2019, Kelley Riordan went to the printer to pick up an item.

44. On the printer, Kelley Riordan saw that Ken Riordan's Hartford FMLA documentation was simply sitting by the printer uncollected and unprotected, giving her serious concerns about Ken Riordan's HIPAA rights.

45. Kelley Riordan spoke with Katrina Caprioni (underwriting manager, Ken Riordan's boss) about the documents.

46. Kelley Riordan returned to her work and a few minutes later Caprioni returned to her.

47. Caprioni, who was sent over by Christi Murrell (HR, "Murrell"), apologized to Kelley Riordan for leaving out Ken Riordan's FMLA information in public view and said that she must have simply forgotten to grab the document from the printer.

48. Kelley Riordan later reported this anonymously to US Bank's ethic's hotline. This was a protected complaint.

49. Kelley Riordan did not report it directly to HR as she was afraid of further retaliation against her complaints, as she had suffered previously.

50. Kelley Riordan did, however, also report it to Terry the following day, though received no response for several weeks. This too was a protected complaint.

51. In or around late May 2019, Kelley Riordan overheard Kim Pyle and Alisha Davis (both loan processors) discussing Ken Riordan and his return to work on June 1.

52. Notably, Kelley Riordan did not even know that Ken Riordan was scheduled to return on the 1st.

53. Kelley Riordan emailed Terry and Lakeisha Brown (HR) asking for a meeting to discuss the above and noted she was displeased about the situation and doubted this was the first discussion about Ken Riordan's FMLA by others at work.

54. The three later had a meeting in Terry's office (with Brown calling in).

55. Kelley Riordan reiterated her HIPAA concerns and Terry got aggressive in response, saying that he had no way to control what his employees discussed.

56. Terry blew off Kelley Riordan's protected complaint and later continued his retaliation against her.

57. Roughly one week later in or around late May or early June 2019, Kelley Riordan spoke again with Brown.

58. Kelley Riordan had had a mental breakdown aimed at Ellery earlier that week and said she felt that there was no way to win with Terry.

59. Brown was unaware of the previously retaliation Kelley Riordan had received from Terry until that call, so Kelley Riordan reviewed all the retaliation she had received previously,

including the situations listed above and that she, unlike other supervisors and managers, was generally never allowed to work from home.

60. In or around early June 2019, the sales department and regional operations managers went to Vegas for another yearly sales rally, they returned around June 17. When they returned, Ellery was still out of the office.

61. Kelley Riordan reiterated to her other managers that that day she would be taking an extended lunch to close on her new home.

62. Christie DeBruler (regional operations manager, "DeBruler") emailed Kelley Riordan directly asking for notice when she left and returned.

63. Kelley Riordan replied-all that her team already knew of the situation and that they would reach out as needed. DeBruler emailed directly back again saying to give notice to her anyway.

64. On or about June 24, 2019, Terry, Kendall, Losey, and Caprioni went on another sales meeting; Judyanne Eversole (supervisor) and Sarah Wilson (supervisor) were also gone that day as well.

65. Notably, this was also the final two days for closing disclosures on loans, a very busy and stressful time at US Bank.

66. Hogue emailed Kelley Riordan about a processor being out that day, so she assigned out the processor's loans for coverage to Shawn Cooper (he covered for Walter Tucker).

67. One of the files was a problem, and Hogue emailed Kelley Riordan asking why they were assigned to Cooper (he was fairly inexperienced, and Kelley Riordan took it as Hogue questioning her role as a manager).

68. Kelley Riordan responded that she assigned work based on employee's capacity.

69. On or about June 25, 2019, Kelley Riordan came into work for a regular day, Ellery came into her office shaking mad about Hogue's email questioning Kelley Riordan's assignment of work.

70. Ellery was very upset with Hogue for the exchange. Immediately, Kelley Riordan's left-side face got very tingly and her blood pressure shot up (she tested it shortly after the exchange).

71. Kelley Riordan video-chatted Ellery about the situation and said she would go to her car to rest and calm herself.

72. Ellery, shortly after, came out to Kelley Riordan to check on her and saw Kelley Riordan extremely emotional.

73. Ellery offered to call an ambulance, but Kelley Riordan refused and checked her blood pressure again; it was even higher than before.

74. Ellery then drove Kelley Riordan home and brought Ken Riordan back to pick up Kelley Riordan's car.

75. Ken Riordan and Kelley Riordan then went to the hospital and Kelley Riordan filed for FMLA the same day.

76. Kelley Riordan remained out on FMLA until on or about September 27, 2019.

77. Through this time, Kelley Riordan faced continued retaliation and problems due to her FMLA usage from US Bank. As a non-exhaustive example of this retaliation, Kelley Riordan was continually harassed about her time out on FMLA.

78. On or about September 27, 2019, Kelley Riordan resigned from US Bank citing her disparate treatment due to her disabilities and FMLA usage.

8

79. Kelley Riordan's resignation was forced by circumstances under which any reasonable person would also have no choice but to resign from US Bank.

80. Kelley Riordan's resignation was thus a constructive termination.

81. Defendant's constructive termination of Kelley Riordan was an adverse employment action against her.

82. Defendant actually forced Kelley Riordan to resign her employment discriminatorily against her disabilities, in retaliation for her complaints of disparate treatment, and/or retaliate against her for using FMLA.

83. As a result of the acts and omissions of US Bank, Kelley Riordan has suffered damages.

## COUNT I: RETALIATION IN VIOLATION OF THE FMLA

84. Kelley Riordan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

85. During her employment, Kelley Riordan qualified for and took FMLA leave.

86. Defendant knew Kelley Riordan took FMLA leave.

87. After Kelley Riordan utilized her qualified FMLA leave, Defendant retaliated against her.

88. During her employment with US Bank, Kelley Riordan was subjected to offensive and harassing conduct based on her FMLA usage from her superiors, coworkers, and customers.

89. Defendant knew or should have known of the harassing conduct against Kelley Riordan.

90. Defendant condoned, tolerated and ratified this harassing conduct.

91. This harassing conduct was severe and/or pervasive.

92. This harassing conduct was offensive to Kelley Riordan.

93. This harassing conduct would also be offensive to any reasonable person.

94. This harassing conduct interfered with Kelley Riordan's ability to perform her job duties.

95. This harassment was based on Kelley Riordan's disability.

96. This harassing conduct was so severe and pervasive that it materially altered the conditions of Kelley Riordan's employment.

97. Kelley Riordan, with no other reasonable choice, was then forced to resign her employment.

98. Any reasonable person in Kelley Riordan's place would also have no choice but to resign due to the conduct.

99. Kelley Riordan's resignation was a constructive termination, an adverse employment action.

100.    Defendant constructively terminated Kelley Riordan's employment.

101.    Kelley Riordan's constructive termination was an adverse employment action against her.

102.    There was a causal link between Kelley Riordan taking medical leave under the FMLA and Defendant's constructive termination of Kelley Riordan's employment.

103.    Defendant actually constructive terminated Kelley Riordan for her FMLA use.

104.    Defendant retaliated against Kelley Riordan by constructive terminating her employment.

105.    Defendant's actions show that it willfully retaliated against Kelley Riordan in violation of U.S.C. § 2615(a).

106.    As a direct and proximate result of Defendant's wrongful conduct, Kelley Riordan is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, et seq.

107.     Kelley Riordan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108.     Kelley Riordan is in a protected class for her disabilities (described *supra*).

109.     R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disabilities.

110.     During her employment with US Bank, Kelley Riordan was subjected to offensive and harassing conduct based on her actual and/or perceived disability from her superiors, coworkers, and customers.

111.     Defendant knew or should have known of the harassing conduct against Kelley Riordan.

112.     Defendant condoned, tolerated and ratified this harassing conduct.

113.     This harassing conduct was severe and/or pervasive.

114.     This harassing conduct was offensive to Kelley Riordan.

115.     This harassing conduct would also be offensive to any reasonable person.

116.     This harassing conduct interfered with Kelley Riordan's ability to perform her job duties.

117.     This harassment was based on Kelley Riordan's disability.

118.     This harassing conduct was so severe and pervasive that it materially altered the conditions of Kelley Riordan's employment.

119.     Kelley Riordan, with no other reasonable choice, was then forced to resign her employment.

120.     Any reasonable person in Kelley Riordan's place would also have no choice but to resign due to the conduct.

121.     Kelley Riordan's resignation was a constructive termination, an adverse employment action.

122.     Defendant constructively terminated Kelley Riordan's employment.

123.     Defendant treated Kelley Riordan differently than other similarly situated employees based upon her disability.

124.     Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Kelley Riordan differently from other similarly situated employees outside her protected class.

125.     Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Kelley Riordan's disability.

126.     Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Kelley Riordan's disability.

127.     Kelley Riordan incurred emotional distress damages as a result of Defendant's conduct described herein.

128.     As a direct and proximate result of Defendant's acts and omissions, Kelley Riordan has suffered and will continue to suffer damages.

### COUNT III: RETALIATION

129.     Kelley Riordan restates each and every prior paragraph of this complaint, as if it were fully restated herein.

130.     As a result of the Defendant's discriminatory conduct described above, Kelley Riordan complained of the discrimination, harassment, and disparate treatment she was experiencing.

131.     Subsequent to Kelley Riordan's complaints to management about harassment, bullying, and disparate treatment toward her, Defendant took adverse employment actions against Kelley Riordan, including but not limited to, constructively terminating her employment.

132.     Defendant's actions were retaliatory in nature based on Kelley Riordan's opposition to the unlawful discriminatory conduct.

133.     Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

134.     Kelley Riordan incurred emotional distress damages as a result of Defendant's conduct described herein.

135.     As a direct and proximate result of Defendant's acts and omissions, Kelley Riordan has suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Kelley Riordan demands from Defendant the following:

a) Issue a permanent injunction:

  i.     Requiring Defendant to abolish discrimination, harassment, and retaliation;

  ii.    Requiring allocation of significant funding and trained staff to implement all changes within two years;

  iii.   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

13

  iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against Defendant for compensatory and monetary damages to compensate Kelley Riordan for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Kelley Riordan's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Matthew G. Bruce
Matthew Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-4744 (x173)
Fax:    (216) 291-5744
Email: Evan.McFarland@SpitzLawFirm.com
Email: Matthew.Bruce@spitzlawfirm.com

*Attorneys for Plaintiff Kelley Riordan*

## JURY DEMAND

Plaintiff Kelley Riordan demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce
Matthew Bruce (0083769)



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
October 6, 2020 04:57 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 992714

**KELLEY RIORDAN**

vs.

**US BANK NATIONAL ASSOCIATION**

**A 2003542**

## FILING TYPE: CLASSIFICATION

## PAGES FILED: 1

EFR200



| COURT OF COMMON PLEAS<br>HAMILTON COUNTY, OHIO | CLASSIFICATION FORM<br><br>WWW.COURTCLERK.ORG | AFTAB PUREVAL<br>CLERK OF COURTS |
|---|---|---|

CASE NUMBER:_____ PLAINTIFF: **Kelley Riordan**_____

**PURSUANT TO SUPERINTENDENCE RULE 4, THIS CASE WAS ORIGINALLY FILED AND DISMISSED**

UNDER CASE NUMBER:_____ BY JUDGE _____

## PLEASE INDICATE CLASSIFICATION INTO WHICH THIS CASE FALLS (please only check one):

- [ ] Other Tort – C360
- [ ] Personal Injury – C310
- [ ] Wrongful Death – C320
- [ ] Vehicle Accident – C370

- [ ] Professional Tort – A300
- [ ] Personal Injury – A310
- [ ] Wrongful Death – A320
- [ ] Legal Malpractice – A330
- [ ] Medical Malpractice – A340

- [ ] Product Liability – B350
- [ ] Personal Injury – B310
- [ ] Wrongful Death – B320

- [ ] Worker's Compensation
- [ ] Non-Compliant Employer – D410
- [ ] Appeal – D420

- [ ] Administrative Appeals – F600
- [ ] Appeal Civil Service – F610
- [ ] Appeal Motor Vehicle – F620
- [ ] Appeal Unemployment – F630
- [ ] Appeal Liquor – F640
- [ ] Appeal Taxes – F650
- [ ] Appeal Zoning – F660

- [ ] Certificate of Qualification – H600

- [x] Other Civil – H700-34
- [ ] Appropriation – H710
- [ ] Accounting – H720
- [ ] Beyond Jurisdiction –730
- [ ] Breach of Contract – 740
- [ ] Cancel Land Contract – 750
- [ ] Change of Venue – H760
- [ ] Class Action – H770
- [ ] Convey Declared Void – H780
- [ ] Declaratory Judgment – H790
- [ ] Discharge Mechanics Lien – H800
- [ ] Dissolve Partnership – H810
- [ ] CONSUMER SALES ACT (1345 ORC) – H820
- [ ] Check here if relief includes declaratory judgment, injunction or class action recovery – H825
- [ ] Habeas Corpus – H830
- [ ] Injunction – H840
- [ ] Mandamus – H850
- [ ] On Account – H860
- [ ] Partition – H870
- [ ] Quiet Title – H880
- [ ] Replevin – H890
- [ ] Sale of Real Estate – H900
- [ ] Specific Performance – 910
- [ ] Restraining Order – H920
- [ ] Testimony – H930-21
- [ ] Environmental – H940
- [ ] Cognovit – H950
- [ ] Menacing by Stalking – H960
- [ ] ] Repo Title – Transfer of Title Only – 970
- [ ] ] Repo Title – With Money Claim – H980
- [ ] Injunction Sexual Predator – 990
- [ ] SB 10 – Termination – H690
- [ ] SB 10 – Reclassification – H697

DATE: **10/06/2020**

ATTORNEY (PRINT): **Matthew G. Bruce, Esq.**

OHIO SUPREME COURT NUMBER: **0083769**

Revised 01/02/2017

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

KELLEY RIORDAN
**PLAINTIFF**

-- vs --

US BANK NATIONAL ASSOCIATION
**DEFENDANT**

Use below number on
all future pleadings

No.  A 2003542
SUMMONS

US BANK NATIONAL ASSOCIATION
300 WALL ST SUITE A                    D - 1
CINCINNATI OH 45212

You are notified
that you have been named Defendant(s) in a complaint filed by

KELLEY RIORDAN
7457 CHINOOK DR
WEST CHESTER OH 45069

Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET   ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.

Name and Address of attorney
MATTHEW G BRUCE
11260 CHESTER ROAD
SUITE 825
CINCINNATI        OH        45246

AFTAB PUREVAL
Clerk, Court of Common Pleas
    Hamilton County, Ohio

By  RICK HOFMANN
                    Deputy

Date:   October 7, 2020


D129997373


VERIFY RECORD

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


KELLEY RIORDAN
**PLAINTIFF**

                                                Use below number on
                                                all future pleadings

      -- vs --
                                    No.  A 2003542
                                             SUMMONS
US BANK NATIONAL ASSOCIATION
**DEFENDANT**


      US BANK NATIONAL ASSOCIATION
      CO CT CORPORATION SYSTEM              D - 1
      4400 EASTON COMMONS WAY STE 125
      COLUMBUS OH 43219



You are notified
that you have been named Defendant(s) in a complaint filed by

      KELLEY RIORDAN
      7457 CHINOOK DR
      WEST CHESTER OH 45069

                                                      Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET  ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.


Name and Address of attorney              AFTAB PUREVAL
MATTHEW G BRUCE                           Clerk, Court of Common Pleas
11260 CHESTER ROAD                           Hamilton County, Ohio
SUITE 825
CINCINNATI       OH        45246
                                          By  RICK HOFMANN
                                                      Deputy


                                          Date:   October 7, 2020


D129997378



VERIFY RECORD

**UNITED STATES POSTAL SERVICE**

ELECTRONIC CERTIFIED MAIL SERVICE RETURN
SUMMONS & COMPLAINT
A 2003542    D1
US BANK NATIONAL ASSOCIATION
FILED: 10/12/2020  6:54:56

Date Produced: 10/12/2020

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0927 7701.
Our records indicate that this item was delivered on 10/10/2020 at 12:05 p.m. in COLUMBUS, OH 43224.
The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        15857514SEQ1